**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01917-RM-STV

KIMBERLY CORSENTINO,

    Plaintiff,

and

JASON BROCKMAN and
MENDY BROCKMAN,

    Plaintiff-Intervenors,

v.

HUB INTERNATIONAL INSURANCE SERVICES, INC. and
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,

    Defendants.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiff Intervenors' Motion for a Protective Order to Prevent Defendant Travelers from Deposing Its Opponent's Counsel [#137] (the "Motion"). The Motion has been referred to this Court. [#139] This Court has carefully considered the Motion and related briefing, related oral argument held on November 27, 2017 [#167, 176], the entire case file and the applicable case law. For the following reasons, the Court **GRANTS** the Motion.

    **I.    BACKGROUND**

    On July 5, 2013, Plaintiff Kimberly Corsentino turned her Jeep in front of Plaintiff Intervenors Jason and Mendy Brockman's Honda causing an accident injuring Ms.

Brockman and rendering her a tetraplegic.[1]  [#173 at ¶¶ 8-9]  At the time of the accident, Ms. Corsentino was a named driver on an insurance policy (the "Policy") issued by Defendant The Travelers Indemnity Company of Connecticut ("Travelers") to Corsentino Dairy Farms, Inc. (the "Farm"), and the Jeep was listed as a scheduled vehicle.  [*Id.* at ¶ 10]

Ms. Corsentino alleges that the Policy, which has a bodily injury liability limit of $500,000 per accident, imposed a duty upon Travelers to defend and indemnify her in any action brought by the Brockmans related to the accident.  [*Id.* at ¶¶ 12-13]  On or about July 8, 2013, the Farm and Ms. Corsentino submitted a claim to Travelers under the Policy.  [*Id.* at ¶ 29]  At that time, Travelers retained a law firm on behalf of the Farm and Ms. Corsentino to begin investigating the accident, and authorized the law firm to retain an accident reconstructionist.  [*Id.* at ¶ 30]  On July 12, 2013, Travelers informed the law firm that it was denying Ms. Corsentino's claim and instructed the law firm to no longer represent Ms. Corsentino; Travelers did not communicate to Ms. Corsentino that she was no longer represented.  [*Id.* at ¶ 31]  Travelers then sent a letter to Ms. Corsentino on July 18, 2013, stating that it was denying her claim, because "the Farm had no insurable interest in the 2008 Jeep Grand Cherokee at the time of the Accident, as the Jeep was not owned by the Farm and was being driven by its owner, Ms. Corsentino."  [*Id.* at ¶ 32]  Nonetheless, on August 20, 2013, Travelers paid benefits to the Farm for the damage sustained by the Jeep in the accident.  [*Id.* at ¶ 34]

On August 8, 2014, the Brockmans told Travelers that they would release all claims against Ms. Corsentino if Travelers paid the bodily injury liability limit on the

---

[1] The Court cites to the allegations in the Second Amended Complaint [#173] to provide context for the instant Motion.

Policy. [*Id.* at ¶ 33; *see also* #137-4] Travelers responded on September 3, 2014, refusing to pay any liability injury coverage to the Brockmans. [#173, ¶ 35; *see also* #182-5] The Second Amended Complaint then alleges that "[a]s a direct result of Travelers' refusal to pay liability benefits owed to the Brockmans, the Brockmans filed suit [(the "Underlying Action")] against Ms. Corsentino . . . on June 17, 2015." [#173, ¶ 36] After Ms. Corsentino was served with a copy of the complaint in the Underlying Action, she asked Travelers to defend her, and Travelers refused. [*Id.* at ¶¶ 37-38] The Underlying Action concluded on December 5, 2016 with the entry of a $31,761,724.04 judgment against Ms. Corsentino. [*Id.* at ¶ 40] On December 28, 2016, Ms. Corsentino asked Travelers to indemnify her from this judgment, and Travelers refused on February 3, 2017. [*Id.* at ¶¶ 41-42]

Ms. Corsentino originally filed this lawsuit in Denver District Court on July 1, 2016. [#3] On July 27, 2016, Hub (with Travelers' consent) removed the case to this Court. [#1 at 1, 4] Travelers subsequently filed a Motion to Compel Joinder of Additional Parties, asking the Court for an order compelling the joinder of the Brockmans. [#33] Before the Court resolved Travelers' Motion to Compel Joinder, the Brockmans filed a Motion to Intervene. [#73] The Court granted the Motion to Intervene, and the Brockmans were given leave to intervene. [#75]

On March 15, 2017, Ms. Corsentino filed an Amended Complaint asserting six claims for relief: (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of contract; (4) violation of Colorado Revised Statute § 10-3-1115 (statutory bad faith); (5) negligent procurement; and (6) negligent misrepresentation. [#80 at 12-17] On that same day, the Brockmans filed their Complaint in Intervention and Jury Demand, which

"incorporate[d] all paragraphs, allegations and claims" set forth in Ms. Corsentino's Amended Complaint. [#83 at 19] On December 5, 2017, this Court granted Ms. Corsentino's Motion to Amend Scheduling Order [#149] and Motion to Amend Complaint to Add Prayer for Exemplary Damages [#148, 151], thereby authorizing Ms. Corsentino to file a Second Amended Complaint adding a claim for exemplary damages. [#172]

On May 22, 2017, Ms. Corsentino served the parties with Supplemental Fed. R. Civ. P. 26(a)(1) Disclosures, which identified eleven individuals with knowledge of facts relevant to her claims. [#137-3] Among the individuals identified were Thomas Metier and Phillip Chupik, two of the Brockmans' attorneys in this lawsuit who also represented the Brockmans in their underlying lawsuit against Ms. Corsentino. [*Id.* at 5] On or about September 21, 2017, Travelers noticed the depositions of Mr. Metier and Mr. Chupik. [#137-1] On October 9, 2017, the Brockmans filed the instant Motion seeking a protective order to prevent Travelers from deposing Mr. Metier and Mr. Chupik. [#137] On October 30, 2017, Travelers filed its response in opposition to the Motion [#145], and the Brockmans then filed a reply in support of the Motion [#157]. Neither Defendant Hub International Insurance Services, Inc. ("Hub") nor Ms. Corsentino initially took a position with regard to the Motion. On November 27, 2017, the Court conducted a hearing on the Motion and invited the parties to submit supplemental briefing on the Motion. [#167, 176] On December 21, 2017, Ms. Corsentino filed a supplemental brief, stating that she "continues to take no position, for or against, on whether the Brockmans' counsel should or may be deposed in this case." [#179, ¶ 2] In addition, Ms. Corsentino's brief provides additional information regarding why she identified Mr.

Metier and Mr. Chupik on her Rule 26(a)(1) Disclosures and why "Plaintiff continues to believe that the Brockmans' counsel could be witnesses in this case." [*Id.* at ¶ 3] On December 22, 2017, Travelers filed its supplemental briefing in support of its response in opposition to the Motion. [#182] On January 11, 2018, the Brockmans filed a brief responding to Ms. Corsentino's and Travelers' supplemental briefing. [#188]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The "good cause" standard of Rule 26(c) is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quotation omitted). The entry of a protective order "is left to the sound discretion of the district court." *Id.* Generally, the party requesting a protective order "bears the burden to show that good cause exists for the issuance of a protective order." *O'Hare v. TRS Recovery Servs., Inc.*, No. 08-cv-01735-RPM-KLM, 2008 WL 5169519, at *2 (D. Colo. Dec. 9, 2008).

However, where, as here, a party seeks to depose an opposing party's attorney in the litigation, courts have required the party seeking the deposition to make a specific showing of need to justify the deposition. In *Shelton v. American Motors Corporation*, the Eighth Circuit held that the deposition of an opposing party's trial counsel should be limited to situations "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1327 (8th Cir. 1986) (internal citation omitted).

5

The Tenth Circuit has expressly approved and adopted the criteria set forth in *Shelton*. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001).

Travelers argues that the *Shelton* test is inapplicable to the facts of this matter, because Travelers seeks to depose Mr. Metier and Mr. Chupik with regard to the prior, underlying litigation between the Brockmans and Ms. Corsentino and not with regard to their involvement in the present case. [#145 at 7-9] In support of this argument, Travelers cites to a subsequent decision of the Eighth Circuit in which it held that the *Shelton* test "was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002). The Eighth Circuit thus held that the party seeking to depose an opposing party's trial counsel in an indemnification case "need not satisfy *Shelton* to depose [the opposing party's] attorneys regarding information involving the concluded patent infringement case." *Id.* at 730-731. Neither the Tenth Circuit nor any of the District Courts in this Circuit, however, have discussed let alone adopted the holding in *Pamida*.

Travelers also cites to *dicta* from a decision of another court in this District stating that the *Shelton* test "only appl[ies] to depositions of trial counsel—or counsel directly representing the party in the pending litigation—and then only if the deposition would reveal litigation strategy in the pending case." *Luster v. Schafer*, No. 08-CV-02399-PAB-KMT, 2009 WL 2219255, at *2 (D. Colo. July 23, 2009). *Luster* is readily

6

distinguishable, however, because the attorney the plaintiff sought to depose was not the attorney representing the defendant in the pending case. *Id.* at *1. To the extent *Luster* may be read, as Travelers suggests, to hold that the *Shelton* test does not apply unless the requested deposition "would reveal litigation strategy in the pending case," the Court finds that holding inconsistent with the Tenth Circuit's holding in *Boughton*. In *Boughton*, the plaintiffs sought damages based upon "alleg[ed] exposures of their persons and property to hazardous emissions of a uranium mill owned by the defendant." 65 F.3d at 825. Plaintiffs sought to depose one of the outside counsel representing the defendant in the litigation related to his prior role as a spokesperson for the defendant corporation and his involvement in preparing license applications and providing business advice related to the construction of the uranium mill in the mid-1970s. *Id.* at 828-829. The proposed topics for the deposition thus did not relate to the attorney's role as trial counsel in the pending litigation or implicate the defendant's "litigation strategy in the pending case." Despite this, the Tenth Circuit found that the trial court appropriately applied the *Shelton* criteria. *Id.* at 829-830.

Accordingly, the Court finds that the *Shelton* criteria, as adopted by the Tenth Circuit in *Boughton*, apply to Travelers' request to take the depositions of Mr. Metier and Mr. Chupik—the Brockmans' trial counsel in this litigation.[2] The requested protective order thus should issue unless (1) no other means exist to obtain the information than to

---

[2] To the extent the Court is not required to apply the *Shelton* test under *Boughton*, the Court believes that the *Shelton* criteria remain useful factors to consider in determining the merits of the motion for protection order. Thus, "this court—like many others within and outside this circuit—finds that consideration of the *Shelton* factors is appropriate" *See Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 13-cv-02813-CMA-NYW, 2015 WL 4272716, at *6 (D. Colo. July 15, 2015), *objections overruled*, 2015 WL 12967849 (D. Colo. Aug. 18, 2015) (collecting cases).

7

depose Mr. Metier and Mr. Chupik; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

### III. ANALYSIS

Travelers identifies three areas of testimony it seeks to pursue through the proposed depositions of Mr. Metier and Mr. Chupik. First, Travelers contends that the Brockmans' attorneys have information related to Travelers' affirmative defense that Ms. Corsentino "may have failed to take reasonable steps under the circumstances to minimize, avoid or mitigate whatever damages, if any, she may have sustained." [#182 at 5-8] Second, Travelers argues that the Brockmans' attorneys have discoverable information regarding Travelers' statute of limitations affirmative defense. [*Id.* at 8-11] Third, Travelers maintains that it should be permitted to depose Mr. Metier and Mr. Chupik, because Ms. Corsentino listed them on her Rule 26(a)(1) disclosures and has indicated that she may call them as witnesses at trial. [*Id.* at 11; #145 at 11] The Court addresses each in turn.

#### A. Information Regarding Travelers' Failure to Mitigate Defense

With regard to its failure to mitigate defense, Travelers contends that there are a number of communications between Richard M. Kaudy—Ms. Corsentino's trial counsel in the underlying lawsuit brought against her by the Brockmans—and the Brockmans' counsel in that lawsuit "concerning the direction of the defense and possible collusion." [#182 at 5] In essence, Travelers contends that the proposed depositions of Mr. Metier and Mr. Chupik are necessary to establish whether Ms. Corsentino may have failed to mitigate her damages by failing to vigorously defend the underlying lawsuit. Travelers implies that Ms. Corsentino may instead have colluded with the Brockmans to assure a

8

large verdict in favor of the Brockmans that could then be pursued against Travelers in this lawsuit.

As a preliminary matter, both Ms. Corsentino and the Brockmans argue that Travelers is barred in this action from challenging the jury's determination of damages in the underlying litigation. Without citation to any authority, the Brockmans argue "the underlying Judgment is final and cannot be collaterally attacked in this action." [#188 at 6] Similarly, without citation to authority, Ms. Corsentino contends that "[w]here there is no [ ] prejudgment assignment agreement that results in a stipulated or arbitrated judgment, the insurer is not permitted to collaterally attack the underlying judgment or proceedings." [#179 at 4 n.1] The Colorado Court of Appeals has held that an insurer may raise the affirmative defense of collusion or fraud in an action for bad faith where the damages award in the underlying case was determined by a neutral arbitrator pursuant to a pre-judgment assignment agreement entered into between the insured and the injured party. DC-*10 Entm't, LLC v. Manor Ins. Agency, Inc.*, 308 P.3d 1223, 1227 (Colo. App. 2013). Neither the Brockmans nor Ms. Corsentino offer any explanation for why that same rule should not apply where, as here, in the absence of a pre-judgment assignment agreement, the damages award is determined by a jury rather than a neutral arbitrator.[3] Nor is it clear to the Court. In both situations, the amount of

---

[3] To the extent the Brockmans and Ms. Corsentino intended to argue that Travelers is collaterally estopped from attacking the damages award, they have not addressed the specific elements of collateral estoppel (*e.g.*, identity of issues, privity of parties, finality of judgment, and opportunity to litigate) and thus have waived this argument. See *Petrella v. Brownback*, 787 F.3d 1242, 1260 (10th Cir. 2015) ("When issues are not adequately briefed, they are deemed waived."); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."); *see also Wolfe v. Sedalia Water & Sanitation Dist.*, 343 P.3d 16, 22 (Colo. 2015) (setting forth elements of collateral estoppel). The Court further notes that at least one Court in this District has held that collateral estoppel does not bar an

9

damages has been determined by a neutral factfinder. Although there is an argument that there is more potential for collusion where the parties have reached a pre-judgment assignment agreement, it also seems possible that parties may collude even in the absence of such an agreement, particularly where it is clear that the plaintiff does not have the financial means to pay any judgment that will be obtained. For purposes of this motion only, the Court will assume, without deciding, that defendants may challenge the reasonableness of the underlying jury verdict, including by asserting fraud or collusion.

Travelers identifies several specific areas of communication between Mr. Kaudy and the Brockmans' counsel about which it seeks to depose Mr. Metier and Mr. Chupik. As an initial matter, Travelers concedes that it has had an opportunity to depose Mr. Kaudy about these topics. [#182 at 7] Travelers fails to provide any specific explanation regarding why Mr. Kaudy's testimony on these topics was deficient. Travelers has not pointed to any instances in which Mr. Kaudy was unable to recall the information Travelers sought or any instances in which Mr. Kaudy's responses to Travelers' questions were incredible. Instead, Travelers argues only that "recollections and interpretations of communications can vary" and that Travelers "is entitled to every man's evidence to discover this case and to mount its defense." [*Id.*] Such generalized arguments, however, are completely at odds with the *Shelton* factor requiring the Court to consider whether other means exist to obtain the information sought. Travelers' argument would justify the deposition of an opposing party's counsel in every case. The

---

insurer from challenging the underlying damages award obtained through arbitration following a *Nunn* agreement, even where that insurer had paid for its insured's defense in the underlying action. *Murphy-Sims v. Owners Ins. Co.*, No. 16-cv-00759-CMA-CBS, 2017 WL 2865679, at *7 (D. Colo. Mar. 17, 2017).

10

record is devoid of evidence that the information sought by Travelers about its mitigation defense is not available from Mr. Kaudy. Although this alone justifies precluding the depositions of Mr. Metier and Mr. Chupik on these topics, the Court nonetheless individually considers each of the specific communications identified by Travelers.

First, Travelers points to an email in which the Brockmans' counsel allegedly "admonished Mr. Kaudy for not opposing [a motion for summary judgment] filed by one of the defendants" in the underlying lawsuit. [#182 at 6] Although Travelers implies that this email evidences collusion between Mr. Kaudy and the Brockmans' counsel, the Brockmans offer a more innocuous explanation—*i.e.*, that it was in both the Brockmans and Ms. Corsentino's interest to keep other defendants (who ultimately were found at trial to bear 50% fault) in the underlying lawsuit. [#157 at 10] More problematic, however, is that the email exchange at issue was between Mr. Kaudy and Jim Gilbert, another one of the Brockmans' attorneys in the underlying litigation. [#182-2] Travelers ignores this fact and offers no explanation for why it has not sought to depose Mr. Gilbert, who does not represent the Brockmans in the instant lawsuit, regarding this email exchange. Nor does Travelers dispute the Brockmans' contention that Travelers failed to even ask Mr. Kaudy about this email exchange. [#157 at 10] Because other means thus exist to obtain the requested information regarding this email exchange, it does not provide a basis to depose Mr. Metier and Mr. Chupik.

Travelers also points to emails following the jury's verdict in the underlying lawsuit in which Mr. Kaudy notifies the Brockmans' attorneys that (1) Ms. Corsentino "does not oppose or object to your proposed entry of judgment against her [or] your calculations" [#182-3] and (2) Ms. Corsentino would be filing a motion for judgment

notwithstanding the verdict and to set aside the verdict "[t]o avoid Travelers claiming prejudice from not pursuing all avenues of relief" [#182-4].[4] Travelers offers no explanation for the alleged relevance of these emails. Without some showing that there was a valid basis for Ms. Corsentino to object to the proposed form of judgment or damages calculations or to seek to set aside the jury's verdict, the Court does not understand these emails to offer any indication of collusion between Mr. Kaudy and the Brockmans' counsel. Travelers offers no basis upon which Ms. Corsentino should have acted but did not. Furthermore, Travelers offers no explanation for why the deposition of Mr. Gilbert, who was copied on one of the two emails and presumably was involved in the Brockmans' post-trial strategy generally, would not be a sufficient source of the information Travelers seeks. The Court thus finds that these two emails fail to provide a basis for the requested depositions of Mr. Metier and Mr. Chupik.

Travelers also points to communications that it contends reflect "discussions between Mr. Kaudy and the Brockmans on how to best posture the liability case for purposes of pursuing Travelers." [#182 at 7] None of the referenced emails, however, reflects any "discussions" between counsel. Instead, each reflects Mr. Kaudy providing the Brockmans' counsel with information about potential experts and case law regarding bad faith litigation against an insurer who denies coverage. [#182-7] It is undisputed that Mr. Kaudy attempted to settle the Brockmans' claims against Ms. Corsentino

---

[4] The email also states that the motion will represent that "the Brockmans oppose/object to the relief sought and argue the jury has adequate record support for its award." [#182-4] Travelers interprets this statement to mean that Mr. Kaudy "would still 'argue the jury has adequate record support for its award.'" [#182 at 6] The Court, however, understands Mr. Kaudy's email to be stating that he will notify the Court that *the Brockmans* take the position that the jury had adequate support for its verdict. Perhaps tellingly, Travelers does not provide the Court with the actual post-trial motion filed in the underlying lawsuit or any testimony from Mr. Kaudy's deposition regarding the intended meaning of this email.

12

through an assignment of Ms. Corsentino's potential bad faith claims against Travelers. [#137-6 at 2-3; #145 at 10-11; #188 at 13] Such agreements are permitted under Colorado law. *See Nunn v. Mid–Century Ins. Co.*, 244 P.3d 116 (Colo. 2010); *Bashor v. Northland Ins. Co. v. Bashor*, 494 P.2d 1292 (Colo. 1972). In this context, it is unsurprising that Mr. Kaudy would try to persuade the Brockmans to settle by providing them information about the potential strength of a bad faith claim against Travelers. These emails thus do not necessarily imply any collusion between Ms. Corsentino and the Brockmans. Indeed, Travelers argues that Ms. Corsentino had an obligation to mitigate her damages in the underlying litigation. One potential way of limiting litigation costs and avoiding a potentially large verdict in the underlying litigation would have been to reach a settlement with the Brockmans. Regardless, Mr. Kaudy already has testified that the Brockmans showed no interest in an assignment agreement and did not respond to his communications on this subject.[5] [#137-6 at 2-3] Because Travelers has provided no basis to question the accuracy of this testimony, the Court finds no necessity for a deposition of Mr. Metier and Mr. Chupik with regard to these emails.

In addition, Travelers seeks to depose Mr. Metier and Mr. Chupik with regard to "communications they had with Travelers and with Mr. Kaudy regarding the Brockmans' settlement demand, and whether Travelers' response was discussed with anyone." [#182 at 6] Travelers fails to explain the alleged relevance of these communications given that it is undisputed that (1) the Brockmans made a policy limits demand in writing to Travelers to settle the underlying action [#137-4]; and (2) Travelers responded to that

---

[5] Specifically, Mr. Kaudy testified that he proposed a *Nunn* agreement and, post judgment, a *Bashor* agreement, but that both proposals were met with "radio silence" from the Brockmans' counsel. [#137-6 at 2] Mr. Kaudy further explained that the Brockmans had "a disinterest in taking over any claims [Ms.] Corsentino may or may not have" against Travelers. [*Id.* at 3]

demand by stating that Ms. Corsentino was not covered under the applicable policy and the Farm had no liability for the Brockmans' injuries [#182-5; #182-6]. With regard to these communications, Travelers contends that it wants to know "if the responses were discussed with Mr. Kaudy, did the Brockmans receive the responses and was it an oversight that they did not respond to either of the letters [from Travelers]." [#182 at 6] Even if this information were somehow relevant to Travelers' mitigation defense, the Court finds that it either is privileged or available from other sources. To the extent Travelers wants to ask the Brockmans' counsel why they did not respond to Travelers' rejection of the settlement demand, that information is protected by the work product doctrine and potentially also by the attorney-client privilege to the extent the decision not to respond was based upon a directive from the Brockmans to their attorneys.[6] To the extent Travelers seeks information regarding whether the Brockmans were aware of the settlement demand and any non-privileged reasons they may have had for not responding to Travelers, that information is available directly from the Brockmans without the need to depose their counsel. To the extent Travelers seeks information regarding any communications between Mr. Kaudy and the Brockmans' counsel regarding the settlement demand, Travelers has offered no specific explanation for why Mr. Kaudy's testimony is insufficient and, regardless, such information too could be obtained directly from the Brockmans.[7] The Court thus finds that Travelers should not

---

[6] Travelers argues generally that it "needs to ask its questions, to see if privilege will be asserted and the information withheld." [#182 at 8] Travelers cites no authority for this proposition and it is contrary to the *Shelton* factor requiring the Court to consider whether the information sought is privileged. If a party were permitted to depose its adversary's counsel merely to confirm that a privilege would be asserted, depositions of opposing counsel would be permitted in every case.

[7] In responding to an interrogatory inquiring about such communications, the Brockmans would be required to disclose any communications their counsel had with

be permitted to depose Mr. Metier and Mr. Chupik regarding the Brockmans' settlement demand and Travelers' response thereto.

### B. Information Regarding Travelers' Statute of Limitations Defense

With regard to its statute of limitations defense, Travelers "seeks information concerning discussions that the Brockmans' counsel had with Ms. Corsentino about settlement, *Nunn/Bashor* agreements, discussions about Ms. Corsentino filing bankruptcy to discharge the Brockmans' judgment, and discussions about executing or not executing on the Brockmans' judgment." [#182 at 8] Travelers contends that communications between Mr. Kaudy and the Brockmans' counsel on these topics "are relevant to when Ms. Corsentino knew or should have known of her alleged injuries resulting from Travelers' denial of coverage." [*Id.* at 10] As a preliminary matter, several of the proposed topics, as phrased, do not appear to be relevant to any statute of limitations defense. The parties dispute whether a one-year or two-year statute of limitations applies to certain of Ms. Corsentino's claims. [#216 at 26-27] Ms. Corsentino initially filed her lawsuit against Travelers on July 1, 2016. [#3] Any communications after July 1, 2015 thus clearly are not relevant to Travelers' statute of limitations defense.[8] Judgment was not entered in the underlying litigation until

---

Mr. Kaudy. *Fann v. Hartford Underwriters Ins. Co.*, No. 11-CV-03156-CMA-BNB, 2013 WL 3927664, at *3 (D. Colo. July 30, 2013) (holding that plaintiffs "cannot hide behind the argument that their sworn responses were 'what each personally knew' and that they, 'themselves,' lacked the 'specific dates on which "notice" was given' because 'all contact with Defendant occurred through their counsel'"); see also *Hickman v. Taylor*, 329 U.S. 495, 504 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968) (finding that, in responding to interrogatory, party may not "claim lack of knowledge if the information reasonably can be secured, whether from his attorney or otherwise").

[8] For example, Travelers points to a May 19, 2016 email from Mr. Kaudy to Mr. Metier and Mr. Gilbert regarding the complaint Ms. Corsentino intended to file against

December 5, 2016. [#173, ¶ 40] Any post-trial communications regarding whether the Brockmans would execute on the judgment obtained or whether Ms. Corsentino would file for bankruptcy to seek to discharge the judgment obtained thus clearly are not relevant to Travelers' statute of limitations defense. Travelers also fails to explain the relevance of the settlement discussions Mr. Kaudy had with the Brockmans' counsel given that no settlement was ever reached.[9]

What the Court believes may be relevant are any communications between the Brockmans' counsel and Mr. Kaudy regarding the Brockmans' intent to bring claims against Ms. Corsentino. Once again, however, Travelers offers no explanation for why its deposition of Mr. Kaudy was insufficient to obtain this information. Travelers does not point to any specific questions regarding these alleged communications that Mr. Kaudy was unable to answer or to which his response was incredible.[10] Instead, Travelers argues that Mr. Kaudy's testimony regarding what he was told by the

---

Travelers and Hub. [#182-11] Travelers fails to explain how this communication possibly is relevant to its statute of limitations defense. It argues that "[c]uriously, three months later, the Brockmans' counsel sent the August 8, 2014 letter to Travelers demanding policy limits" [#182 at 9], but the Brockmans demand letter was sent in August 2014—almost two years prior to Mr. Kaudy's email regarding the proposed complaint against Travelers.

[9] As noted above, Mr. Kaudy testified that his *Nunn* and *Bashor* agreement proposals were met with "radio silence" from the Brockmans' counsel, and Travelers has not presented any evidence calling this testimony into question. [#137-6 at 2]

[10] Travelers points to Mr. Metier's statement at oral argument that Mr. Kaudy testified at his deposition that Mr. Kaudy "was apparently informed, according to him, that there wasn't a decision at this point as to whether Ms. Corsentino was going to be sued and pursued in the case." [#176 at 97:16-19] Travelers argues that this statement implies that "there could be discrepancies" concerning what Mr. Kaudy had been informed by the Brockmans' counsel. [#182 at 10] As a preliminary matter, the Court is hesitant to convert Mr. Metier's argument at the motion hearing into factual evidence. Moreover, the Court understands Mr. Metier's use of the qualified language—*i.e.*, "apparently" and "according to him"—to reflect that he was describing Mr. Kaudy's state of mind, about which Mr. Metier has no personal knowledge, and not an indication that Mr. Metier was disagreeing with the substance of Mr. Kaudy's testimony.

Brockmans' counsel "may be objectionable as hearsay." [#182 at 10] As the Court explained at oral argument, however, to the extent Mr. Kaudy's testimony regarding what he was told by the Brockmans' counsel is introduced for the purpose of establishing when Ms. Corsentino knew or should have known she was going to be sued by the Brockmans, it is not hearsay. [#176 at 76:15-17] Moreover, to the extent Travelers desires to know when the Brockmans conveyed to Ms. Corsentino their intent to sue her, such information is available from the Brockmans directly. *See supra* note 7. The Court thus finds that the *Shelton* factors weigh against allowing Travelers to depose Mr. Metier and Mr. Chupik regarding Travelers' statute of limitations defense.

### C. The Rule 26(a)(1) Disclosure

Finally, Travelers points out that Ms. Corsentino identified Mr. Metier and Mr. Chupik in her Rule 26(a)(1) disclosures as individuals with knowledge of facts relevant to her claims and "will not rule out the possibility that she will call the Brockmans' attorneys as witnesses concerning the underlying litigation." [#182 at 11] Travelers argues that "[a]llowing [Ms. Corsentino] to call the Brockman[s'] attorneys at trial but disallowing Travelers' depositions of them would be manifestly unjust and serve to prejudice Travelers in its preparation for trial." [#145 at 11] Travelers provides no legal authority for its position that it must be allowed to depose all individuals listed on an opposing party's Rule 26(a)(1) disclosures.

Given that the parties have not yet prepared witness lists for trial, the Court finds this issue premature for resolution. Although Ms. Corsentino currently believes that the Brockmans' counsel "could be witnesses in this case" [#179, ¶ 3], that belief may change prior to the preparation of witness lists such that one or both of the Brockmans'

17

attorneys are not included on her proposed witness list. To the extent that one or both of the Brockmans' attorneys ultimately are included on Ms. Corsentino's proposed witness list, the Brockmans may then file a motion—similar to the current motion—seeking to strike their attorneys from the witness list. Indeed, in responding to Ms. Corsentino's Supplemental Brief, the Brockmans challenge the appropriateness of all of the areas of testimony upon which Ms. Corsentino contends that the Brockmans' counsel may be called upon to testify at trial. [#188 at 4-8] The Court finds it premature and improper to decide in the context of the instant Motion whether the Brockmans' attorneys should be allowed to testify at trial as no much motion has been filed or referred to this Court. To the extent that Mr. Metier and/or Mr. Chupik are included and permitted to remain on the trial witness list, Travelers may renew its request to take their depositions.

Both Ms. Corsentino and Travelers argue that the Brockmans likely will be dismissed from the case prior to going to trial. [#179, ¶¶ 4-5; #182 at 2-4] Specifically, they argue that the Brockmans are only proper parties to the claim for declaratory judgment, which likely will be resolved by the Court on a motion for summary judgment. [*Id.*] The Brockmans disagree. [#188 at 3] The Court finds it premature and improper to resolve this issue in the context of the instant Motion. However, the Court notes that, to the extent that the Brockmans are dismissed from this case prior to trial, the analysis with regard to whether the Brockmans' counsel may be deposed and/or testify at trial may change and Travelers may renew its request to take their depositions at that time.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the Brockmans' Motion for a Protective Order [#137] without prejudice to Travelers renewing its request to depose Mr. Metier and/or Mr. Chupik if there is a material change in the circumstances of the litigation—*e.g.*, if the Brockmans are dismissed as parties from the lawsuit or permitted to remain on a trial witness list.

DATED: March 7, 2018

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge